UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LEE STRAND,<br><br>Petitioner,<br><br>v.<br><br>MIKE McDONALD,<br><br>Respondent. | No. 2:12-cv-1237 TLN KJN P<br><br><br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 conviction of murder and arson of an inhabited structure. Petitioner was sentenced to 75 years to life in state prison. Petitioner claims that (1) he was denied a fair trial when the trial court denied defense counsel's motion for new trial based on juror misconduct; and (2) he was denied due process when the trial court failed to exclude acts of a thirteen year old prior conviction. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

On January 19, 2010, a jury found petitioner guilty of murder and arson of an inhabited structure, but did not find the special circumstance allegation true, and found two prior strike allegations true. (Clerk's Transcript ("CT") 716-17.) On May 11, 2010, the petitioner was sentenced to 75 years to life in state prison.

1

Petitioner appealed the conviction to the California Court of Appeal, First Appellate District. The Court of Appeal affirmed the conviction on October 19, 2011. (Respondent's Exhibit (hereafter "Ex.") 8.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on January 11, 2012. (Ex. 9.)

Petitioner filed the instant petition on April 4, 2012. (ECF No. 1.)

III. Facts[1]

>The evidence at trial demonstrated that, at the time of the killing on July 7, 2007, L.F. had been in a relationship with [petitioner] for three to four years, living with him and frequently using methamphetamine with him. Eventually, [petitioner] became physically abusive, and L.F. attempted to leave him. On July 6, [petitioner] and L.F. had a violent argument when L.F. refused to return home with him, during which [petitioner] threw her against a wall. The next day, [petitioner] told L.F. he would "get you and your whole family, starting with your family first." That night, [petitioner] set fire to the home of L.F.'s elderly parents. Her mother was unable to escape and died of smoke inhalation.

>The prosecution was permitted to call three witnesses to testify about similar conduct by [petitioner] 10 years earlier when another girlfriend, M.E., ended their relationship, the trial court later instructing the jury the evidence was admitted for the limited purpose of proving [petitioner's] motive and intent. M.E. testified she dated [petitioner] several years from approximately 1995 to 1997, and allowed him to live in her home. When she tried to break off the relationship, [petitioner] became "violent." After he hit her "a couple of times" and she learned he had told another person he was going to kill her, she called the police. While the police were at her home, [petitioner] "whizz[ed] by," driving her car, and crashed the car into her neighbor's home. When the police examined the car, they found the component parts of an explosive device. Somewhat later, M.E. found out [petitioner] had told another person he was going to kill her and her son and blow up her house. [Petitioner] was convicted of making this threat.

>One of [petitioner's] acquaintances at this time, L.D., testified she, [petitioner], and her boyfriend used methamphetamine together. When she first met [petitioner], he showed her a collection of weapons. The last time L.D. saw [petitioner], he came to her house, looking as though he was under the influence of methamphetamine. [Petitioner] pushed his way into the home, saying he needed to use the telephone. Speaking with M.E.'s son on

---

[1] The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Strand, No. A128629 (Oct. 19, 2011), a copy of which was lodged by respondent as Exhibit 8 on July 24, 2012.

2

> the phone, [petitioner] said he was "coming over" to "blow them up." [Petitioner] had "some like electrical thing" in his hand and claimed to have explosives in his trunk that he intended to use on his girlfriend's home.
>
> A former police officer testified that in 1997 he was called to M.E.'s home. As he was driving away after investigating the call, [petitioner] passed him driving M.E.'s car, which she had reported stolen. After a high-speed chase, [petitioner] crashed the car into a retaining wall and parked cars near M.E.'s house. He was uncooperative and belligerent, yelling and cursing at the officer. When the officer searched the car, he found a homemade explosive device.

(People v. Strand, slip op. at 2-3.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a

////

3

decision of the Supreme Court and nevertheless arrives at a different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Johnson, 133 S. Ct. at 1097.

////

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

V. Petitioner's Claims

    A. Alleged Juror Misconduct

Petitioner argues that during deliberations jurors violated the trial court's instructions by discussing petitioner's failure to testify. Petitioner contends that he was denied a fair trial when the trial court denied defense counsel's motion for new trial based on juror misconduct. Respondent contends that the misconduct was not extrinsic to the trial, and that, even assuming there was constitutional trial error, the evidence of petitioner's guilt was overwhelming and thus such error did not have an influence on the verdict.

        i. Trial Court

The relevant trial court proceedings were summarized by the California Court of Appeal:

> A few months after the end of trial, defense counsel filed a motion for a new trial on grounds, among others, of jury misconduct. The motion was accompanied by a declaration of counsel summarizing his conversations with a juror. According to counsel, the juror said that several times during deliberations one or another of the jurors brought up defendant's failure to testify, suggesting that an innocent person would have testified. The juror said he reminded the jurors not to consider the failure to testify, but the issue continued to arise.
>
> The court held an evidentiary hearing on the motion, taking testimony from the juror mentioned in counsel's declaration. The juror generally confirmed the content of counsel's declaration,

5

telling the court that defendant's failure to testify was mentioned between six and twelve times during jury deliberations, by as many as half of the jurors. About one-quarter to one-third of the remarks included the view that "if [defendant] was innocent he would have testified." Each time the issue arose, the juror reminded his fellow jurors that defendant had a right not to testify. The jurors "never spent a great bit of time on this issue. I mean, it was always brought up, and it seemed to derail itself usually within three or four minutes . . . because we had, you know, other issues." None of the jurors suggested they should return a verdict of guilty because the defendant did not testify.

The jurors deliberated over parts of four days. The remarks occurred most frequently on the first day of deliberations, less so on the second day. As the juror said, "day one was pretty rough for us," but "[t]he last two days it didn't seem to be an issue" and "wasn't discussed." The last two days were taken up exclusively with deliberations regarding the evidence.

Although the trial court found "clear[ ]" juror misconduct, it declined to require testimony from other jurors and denied the motion for a new trial, finding the misconduct not prejudicial on the basis of "all of the evidence adduced during the trial."

(People v. Strand, slip op. at 3-4.)

      ii.  State Court Opinion

The last reasoned rejection of petitioner's juror misconduct claim is the decision of the California Court of Appeal for the First Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

"The Fifth Amendment to the federal Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' . . . The right not to testify would be vitiated if the jury could draw adverse inferences from a defendant's failure to testify. Thus, the Fifth Amendment entitles a criminal defendant, upon request, to an instruction that will 'minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify.'" (People v. Leonard (2007) 40 Cal.4th 1370, 1424–1425.) A juror's violation of an instruction not to consider the defendant's failure to testify constitutes misconduct. (Id. at p. 1425.)

"When the record shows there was juror misconduct, the defendant is afforded the benefit of a rebuttable presumption of prejudice. [Citations.] This presumption is provided as an evidentiary aid to the defendant because of the statutory bar against evidence of a juror's subjective thought processes and the reliability of external circumstances to show underlying bias. [Citations.] If a review of the entire record shows no substantial likelihood of juror bias, the presumption has been rebutted. [Citations.] [¶] . . . [¶] . . .

6

If the record shows a substantial likelihood that even one juror 'was impermissibly influenced to the defendant's detriment,' reversal is required regardless of whether the court is convinced an unbiased jury would have reached the same result." (People v. Cissna (2010) 182 Cal.App.4th 1105, 1116-1117 (Cissna).)

In applying the substantial likelihood standard, "[t]he standard is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] and of society's strong competing interest in the stability of criminal verdicts." (In re Hamilton (1999) 20 Cal.4th 273, 296.) We must bear in mind that "the jury is a 'fundamentally human' institution; the unavoidable fact that jurors bring diverse backgrounds, philosophies, and personalities into the jury room is both the strength and the weakness of the institution. . . . If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.'" (Ibid.) An appellate court "independently review[s]" a trial court's finding of no prejudice arising from juror misconduct. (People v. Loker (2008) 44 Cal.4th 691, 749 (Loker).)

Although there is no doubt the trial court correctly found jury misconduct, we find no substantial likelihood that the improper discussions, in the end, influenced the vote of any juror. The case is indistinguishable in this regard from Loker. The jurors in Loker initially had brief discussions of the defendant's failure to testify, but whenever the issue came up the foreperson reminded the others that they were to restrict their discussions to the evidence and not to consider the defendant's decision not to testify.FN1  Soon, the jurors ceased to discuss the issue. (Loker, supra, 44 Cal.4th at p. 748.) The Supreme Court found no prejudice, noting: "It is natural for jurors to wonder about a defendant's absence from the witness stand. [Citation.] The amended declarations show that the comments on this subject were brief and played no role in the jury's penalty deliberations. '[T]he purpose of the rule prohibiting jury discussion of a defendant's failure to testify is to prevent the jury from drawing adverse inferences against the defendant, in violation of the constitutional right not to incriminate oneself.' [Citation.] Even if some comments disclosed in the amended declarations might have given rise to inferences adverse to defendant, the foreperson promptly forestalled that possibility, reminding the jurors that defendant had a right not to testify and that his assertion of that right could not be held against him. Under these circumstances, the purpose of the rule against commenting on defendant's failure to testify was served, and the presumption of prejudice is rebutted." (Id. at p. 749; see similarly People v. Avila (2009) 46 Cal .4th 680, 726-727 [finding no prejudice on similar facts].)

> FN1. [Petitioner] contends the subject arose only once during the jurors' deliberations in Loker. The evidence about the frequency of the remarks was mixed and inconsistent. (Loker, supra, 44 Cal.4th at p. 748 & fn. 27.) The trial court found that "discussions" had occurred, and the Supreme Court held the finding was supported by substantial evidence. (Id. at p. 749, italics added.)

7

> The discussion applies equally well to the circumstances here. Several jurors improperly raised [petitioner's] failure to testify and some initially expressed views suggesting the failure implied guilt. Each time this occurred, however, the juror who reported the misconduct reminded the other jurors that they were not to discuss or draw conclusions from the [petitioner's] failure to testify. The message appears to have gotten across. By the second day of deliberations the comments concerning [petitioner's] failure to testify diminished, and by the third day they were absent altogether. On that day and the next, the jurors discussed the evidence exclusively. Given this record, it can only be concluded the jurors based their ultimate decision on the evidence presented, rather than on any inference drawn from [petitioner's] failure to testify.
>
> [Petitioner] relies heavily on Cissna, which involved a juror's conversations with a nonjuror friend outside the courtroom. The court found the presumption of prejudice unrebutted because the juror's conversations occurred every day and covered not only the [petitioner's] failure to testify but also the merits of the case. (Cissna, supra, 182 Cal.App.4th at pp. 1118, 1120, 1121-1122.) Because it involved a juror's discussions about the case with a nonjuror, Cissna concerned a fundamentally different type of misconduct than occurred here. In addition, with respect to the discussions of the [petitioner's] failure to testify, Cissna is further distinguishable because it included no evidence, as here, that the juror was made aware of his misconduct, leading to its abatement over the course of deliberations and suggesting a mitigation of any initial prejudice. For these reasons, we find Cissna unpersuasive here. A case cited as support in [petitioner's] reply brief, People v. Vigil (2011) 191 Cal.App.4th 1474, is even further afield, involving an experiment conducted by a juror outside the courtroom. (Id. at pp. 1482-1483.)
>
> [Petitioner] also argues we should find prejudice because this was a "close" case, in which the jurors deliberated for more than 20 hours, had testimony read back, and asked several questions of the court. The unmistakable concern of the jurors with the evidence presented at trial and their lengthy deliberations persuade us they decided the case on the evidence presented, rather than on the basis of any assumptions drawn from [petitioner's] failure to testify. Rather than demonstrating prejudice, the lengthy deliberations of the jury tend to rebut its presence.

(People v. Strand, slip op. at 4-7.)

### iii. Legal Standards

Under the Sixth Amendment, a criminal defendant has the right to be tried by an impartial jury and to confront and cross-examine the witnesses who testify against him. See Irvin v. Dowd, 366 U.S. 717, 722 (1961); Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987). In reviewing a claim

8

of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974). See also Jeffries v. Blodgett, 5 F.3d 1180, 1189 (9th Cir. 1993) (question on habeas review is whether juror misconduct deprived defendant of his or her right to fair trial). "To obtain relief, petitioners must now show that the alleged error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 1190 (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); Fields v. Brown, 431 F.3d 1186, 1209 n.16 (9th Cir. 2005) (Brecht provides the standard of review for harmless error in cases involving unconstitutional juror misconduct).

    iv. Application

  A defendant in a criminal case is entitled to a jury that reaches a verdict on the basis of the evidence produced at trial. Turner v. Louisiana, 379 U.S. 466 (1965); Estrada v. Scribner, 512 F.3d 1227, 1238 (9th Cir. 2008); Raley v. Ylst, 470 F.3d 792, 803 (9th Cir. 2006). "Evidence not presented at trial, acquired through out-of-court experiments or otherwise, is deemed 'extrinsic.'" United States v. Navarro-Garcia, 926 F.2d 818, 821 (9th Cir. 1991) (citing Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987)). When the jury considers extraneous or extrinsic facts not introduced in evidence, a defendant has effectively lost his Sixth Amendment rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence. Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995). A petitioner's failure to testify in his own defense is not extrinsic evidence because that fact is apparent from the trial itself and is not obtained from outside sources. Raley, 470 F.3d at 803 (citing United States v. Rodriquez, 116 F.3d 1225, 1226-27 (8th Cir. 1997)). Therefore, as a general rule, a jury's discussion of a defendant's failure to testify does not violate the Sixth Amendment because it does not involve the receipt of extrinsic evidence. Id. That rule applies here. Although the jury may have violated the trial court's instructions, "what happened (or did not happen) in the courtroom was a part of the trial, not extrinsic to it." Raley, 470 F.3d at 803. Petitioner is therefore not entitled to relief on this claim because it concerns only intrinsic jury processes. Id. (denying federal habeas relief based upon claim that petitioner's jury during its deliberations

1  discussed his decision not to testify); United States v. Rutherford, 371 F.3d 634, 639-40 (9th Cir.
2  2004) (finding testimony regarding a jury's consideration of the defendant's failure to testify to
3  "not concern facts bearing on extraneous or outside influences on the deliberation").

4      In addition, Rule 606(b)(2) of the Federal Rules of Evidence limits a federal court's ability
5  to consider a juror's statement regarding the validity of a verdict to "extraneous prejudicial
6  information . . . improperly brought to the jury's attention;" "outside influence . . . improperly
7  brought to bear upon any juror;" or "a mistake . . . in entering the verdict onto the verdict form."
8  Id. This rule applies to federal habeas corpus actions. Fed. R. Evid. 1101(e); Capps v. Sullivan,
9  921 F.2d 260, 262 (10th Cir. 1990) (Rule 606(b) applies to federal habeas proceedings).
10 Testimony regarding the jury's consideration of a defendant's failure to testify does not qualify
11 under any of those exceptions. Rutherford, 371 F.3d at 639-40. Therefore, the juror's testimony
12 concerning discussions during deliberations cannot be considered by this court in analyzing this
13 claim.

14     But even if this court were able to consider the juror's testimony concerning the
15 misconduct, petitioner would still not be entitled to federal habeas relief. The trial court found
16 that despite the misconduct, petitioner was not prejudiced "in light of all the evidence adduced at
17 trial." (RT 2148.) The state appellate court concluded that the trial court correctly found jury
18 misconduct based on jurors discussing petitioner's failure to testify in his own defense, but that
19 the misconduct was harmless. (People v. Strand, slip. op. at 5.) The appellate court found that
20 there was no substantial likelihood that the improper discussions influenced the vote of any juror
21 because each time a juror improperly raised petitioner's failure to testify or suggested the failure
22 to testify implied guilt, the juror who reported the misconduct reminded the other jurors that they
23 were not to discuss or draw conclusions from petitioner's failure to testify. (Id., see also RT
24 2127.) By the second day of deliberations, the comments concerning petitioner's failure to testify
25 diminished. (People v. Strand, slip. op. at 5; see also RT 2128, 2136.) On the third and fourth
26 day, jurors only discussed the evidence. (Id.) In addition, the state appellate court found that the
27 jurors' lengthy deliberations, and their concern with the evidence, as demonstrated by their
28 ////

requests to have testimony read back, and their questions to the court, supported the court's view that the verdict was rendered based on the evidence. (People v. Strand, slip. op. at 7.)

Even if this court were able to consider the juror's testimony concerning the misconduct, petitioner is not entitled to habeas relief. The state appellate court's determination of harmless error with respect to petitioner's allegation of juror misconduct was not objectively unreasonable. References to petitioner's failure to testify were brief, diminished over time, and did not extend into the third and fourth days of deliberation (RT 2127-38), and did not influence all of the jurors, as evidenced by their focus on the evidence and their lengthy deliberations. Accordingly, petitioner is not entitled to federal habeas relief on this claim. See Towery v. Schriro, 641 F.3d 300, 304 (9th Cir. 2010) ("When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable."); Cooper v. Brown, 510 F.3d 870, 921 (9th Cir. 2007).

### B. Uncharged Offenses Evidence

Petitioner claims that he was denied due process and his right to a fair trial when the trial court failed to exclude prior acts and threats of misconduct. (ECF No. 1 at 6; 1-1 at 18-23.) Petitioner contends that the use of extensive testimony of several thirteen year old incidents violated petitioner's right to a fair trial. Petitioner argues that he was prejudiced by the admission of this prior acts evidence, and that the prejudice was enhanced by the prosecution's repeated reference to the 1997 incidents during closing arguments. (ECF No. 1-1 at 22-23.) Respondent counters that the state court's rejection of this claim was not objectively unreasonable, and that the admission of the prior acts evidence did not have a substantial or injurious effect on the verdict.

#### i. State Court Opinion

The California Court of Appeal for the First Appellate District rejected petitioner's claim in a reasoned decision on direct appeal:

> [Petitioner] contends the evidence of his erratic behavior and threats of violence when M.E. attempted to end their relationship years earlier was improperly admitted under Evidence Code section

11

1101, subdivision (b) and should, in any event, have been excluded under Evidence Code section 352. The trial court's decision to admit evidence of prior uncharged conduct under subdivision (b) of section 1101 is reviewable for abuse of discretion (People v. Lenart (2004) 32 Cal.4th 1107, 1123), as is the decision not to exclude the evidence under section 352 (People v. Cole (2004) 33 Cal.4th 1158, 1195).

Evidence Code section 1101, subdivision (a) prohibits the use of evidence of a person's character, including evidence of character as manifested in prior uncharged conduct, to prove conduct on a specific occasion. The policy underlying section 1101, which has deep roots in the Anglo-American legal system, is that evidence of a defendant's past conduct cannot be admitted solely for the purpose of proving that the defendant is a person with the general propensity to commit crimes. (People v. Kipp (1998) 18 Cal.4th 349, 369.) The Evidence Code, however, recognizes that evidence of uncharged criminal acts can be relevant for reasons other than to prove bad character. Accordingly, subdivision (b) of section 1101 authorizes the admission of evidence of criminal acts otherwise excludable under subdivision (a) if the acts are "relevant to prove some fact . . . other than [the defendant's] disposition to commit [a criminal] act." Evidence is most commonly admitted under subdivision (b) to prove (1) motive or intent, (2) a common design or plan between the uncharged and charged crimes, and (3) identity. (People v. Ewoldt (1994) 7 Cal.4th 380, 402-403 & fn. 6 (Ewoldt).)

In order to justify admission under Evidence Code section 1101, the uncharged conduct must bear some resemblance to the charged crime, although the requisite degree of similarity will vary depending upon the purpose for which the evidence is admitted. (Ewoldt, supra, 7 Cal.4th at p. 402.) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance."'" (Ibid.) "We have long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." (People v. Robbins (1988) 45 Cal.3d 867, 879, superseded on other grounds by statute, People v. Jennings (1991) 53 Cal.3d 334, 387, fn. 13.)

[Petitioner] concedes that "testimony of threats by [petitioner] may have had some relevance in the instant case," and we have no difficulty concluding the evidence of [petitioner's] conduct with respect to his prior girlfriend was sufficiently similar to the present incident to satisfy Ewoldt's requirements for the admission of prior acts evidence relating to motive and intent. The evidence indicated

12

that [petitioner's] reaction to an earlier girlfriend's decision to end a romantic relationship was to attempt to coerce her into changing her mind through threats of violence against the girlfriend and her family, the use of physical violence against the girlfriend, and threats of and preparations for the destruction of her home, during which [petitioner] threatened to kill the girlfriend and her son. His reaction to L.F.'s ending of their relationship followed the same pattern, with threats of violence against L.F. and her family, physical violence against L.F., and arson against her parents' residence. The jury could readily have concluded that, just as [petitioner's] motive with respect to M.E. was to punish or coerce her with respect to the severing of their relationship, he acted with the same purpose here. Similarly, the jury could conclude [petitioner's] intent was the same in both instances, to commit arson against the home and injure the residents. We find no abuse of discretion in the trial court's decision to admit this evidence under Evidence Code section 1101, subdivision (b).

[Petitioner's] true objection appears to be, not that the prior uncharged conduct was inadmissible under Evidence Code section 1101, subdivision (b), but that the trial court did not sufficiently tailor the admitted evidence to address solely [petitioner's] threats and violence. While conceding the relevance of the threats against M.E., [petitioner] argues, "the majority of the evidence had no relevance. Evidence of such things as [petitioner] using drugs, taking a car, damaging the car and other property, and being belligerent to an officer and spitting on him were not at all analogous to the charges against [petitioner] in the case at bench."

We find this argument forfeited by [petitioner's] failure to object or otherwise raise a similar argument at trial. [Petitioner] moved in limine to exclude evidence of threats to M.E., but the motion did not seek, in the alternative, to restrict the scope of the evidence putting those threats in context. In its remarks when denying the motion in limine, the trial court merely declined to exclude evidence of the threats; it did not make any ruling regarding the manner in which the evidence could be introduced. [Petitioner] was therefore free to object at trial to the admission of any details of the uncharged prior conduct testimony he believed to be unnecessary and prejudicial. Had [petitioner] objected in this manner, the trial court could have admitted the concededly relevant information and excluded the purportedly irrelevant details. (See, e.g., People v. Demetrulias (2006) 39 Cal.4th 1, 13 [trial court excluded particularly prejudicial details from evidence of prior uncharged conduct]; People v. Romero (2008) 44 Cal.4th 386, 411["[t]he reason for [the forfeiture] rule is to allow errors to be corrected by the trial court and to prevent gamesmanship by the defense"].) No such objections were made during the testimony of the witnesses regarding the threats. Accordingly, any claim that irrelevant and prejudicial evidence was admitted regarding the circumstances of the uncharged prior conduct is forfeited. (People v. Romero, at p. 411.)

In any event, we find no prejudice from the admission of these details. It was necessary for the jury to hear some of the details to

13

which [petitioner] now objects in order to understand the nature and context of the threats. Further, the details to which [petitioner] objects -- [petitioner's] theft and damage of a vehicle, belligerence toward an officer, and use of drugs -- were not sufficiently prejudicial, in light of the other evidence of [petitioner's] conduct, to have likely swayed the jury. (People v. Watson (1956) 46 Cal .2d 818, 836 [improper admission of evidence is harmless error unless it is "reasonably probable" [petitioner] would have achieved a more favorable result in its absence].)

[Petitioner] also objects under Evidence Code section 352. It is well-recognized that, even if prior uncharged conduct evidence satisfies the Ewoldt requirements for admission, it is still subject to a prejudice argument under section 352. "'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have substantial probative value.' [Citation.] [¶] . . . We thus proceed to examine whether the probative value of the evidence of [petitioner's] uncharged offenses is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (Ewoldt, supra, 7 Cal.4th at p. 404; see People v. Kipp, supra, 18 Cal.4th at p. 371.) Pursuant to Ewoldt, the probative value of the evidence must be weighed against its potential for undue prejudice, determined by (1) its inflammatory nature relative to the charged offenses, (2) the risk of issue confusion, (3) its remoteness, and (4) the consumption of time. (See People v. Branch (2001) 91 Cal.App.4th 274, 283–285.)

Again we find no abuse of discretion. The evidence had substantial probative value, demonstrating [petitioner] viewed the breakup as sufficient justification for arson and his intent when acting was to damage the home and injure the occupants. In contrast, the potential for undue prejudice was relatively small. [Petitioner's] conduct toward M.E., while comparatively extreme, was less violent and destructive, and therefore less inflammatory, than the charged crime itself. Because the events occurred years apart and involved different persons, there was little risk of confusion, but the prior conduct was not so remote as to bear little relevance to [petitioner's] current mental state. Finally, the evidence was introduced through three witnesses whose testimony consumed a relatively small amount of time. There was no undue focus on the prior conduct. Given the lack of undue prejudice, we also find no violation of [petitioner's] due process rights from the admission of this evidence.

(People v. Strand, slip op. at 7-11.)

ii.  Legal Standards

The question whether evidence of petitioner's prior uncharged acts was properly admitted under California law is not cognizable in this federal habeas corpus proceeding.  Estelle, 502 U.S.

14

at 67. The only question before this court is whether the trial court committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process. Id.; see also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that the propensity evidence introduced against the defendant did not violate his right to due process); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the due process clause). Accordingly, the state court's rejection of petitioner's claim that the trial court violated his right to due process when it admitted evidence of his prior uncharged acts is not contrary to United States Supreme Court precedent, and may not be set aside. 28 U.S.C. § 2254(d).

Moreover, petitioner has not demonstrated that the decision of the California Court of Appeal was objectively unreasonable. Under Ninth Circuit law, the admission of "other acts"

15

evidence violates due process only if there were no permissible inferences the factfinder could have drawn from the evidence. See McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they lead only to impermissible inferences about the defendant's character"); Jammal, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions"). See also LeMay, 260 F.3d at 1027 (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have").

Here, the trial court held a hearing on the defense counsel's motion in limine to exclude evidence of petitioner's prior uncharged acts and concluded that the uncharged acts evidence arrest was relevant to prove both motive and intent. (RT 146-48.) The court noted that the uncharged acts evidence was similar in that it demonstrated petitioner became violent when long term girlfriends tried to leave him, threatening both the girlfriend and members of her family, and thus involved conduct similar enough to be probative on the issue of petitioner's intent and motive.[2] (RT 146-48.) Due to these similarities, and their probative value on the issues of motive and intent, the trial court's conclusion was not objectively unreasonable. See Williams v. Stewart, 441 F.3d 1030, 1040 (9th Cir.) (admission of evidence of uncharged burglary not unduly prejudicial and did not implicate due process; evidence properly admissible to show identity and intent in trial for another burglary where the crimes were similar), cert. denied, 549 U.S. 1002 (2006).

Further, the jury instructions did not compel the jury to draw an inference of propensity. The jury was informed that certain evidence was admitted for a limited purpose, and that the jury

////

---

[2] See People v. Ewoldt, 7 Cal.4th 380, 393 (Cal. 1994) ("In the present case, evidence of defendant's prior misconduct is relevant to prove a material fact other than defendant's criminal disposition, because the similarity between the circumstances of the prior acts and the charged offenses supports the inference that defendant committed the charged offenses pursuant to the same design or plan defendant used to commit the uncharged misconduct").

could consider such evidence "only for that purpose and for no other." (CT 661.) The court also issued the following specific jury instruction:

> The People presented evidence that the [petitioner] committed other offenses and other behavior that were not charged in this case.
>
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the [petitioner] in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> If the People have not met this burden, you must disregard this evidence entirely.
>
> If you decide that the [petitioner] committed the uncharged offenses and or other behavior, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:
>
> The defendant acted with the intent to kill in this case.
>
> The defendant had a motive to commit the offenses alleged in this case.
>
> In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and/or other behavior and the charged offenses.
>
> Do not consider this evidence for any other purpose.
>
> Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.
>
> If you conclude that the defendant committed the uncharged offenses and/or other behavior, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of murder or arson. The People must still prove each charge or any lesser offense beyond a reasonable doubt.

(CT 672.) In addition, the jury instructions as a whole correctly informed petitioner's jury that the prosecution had the burden of proving petitioner guilty beyond a reasonable doubt. (CT 649.)

Under these circumstances, any error in admitting evidence of the uncharged offenses did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 637. See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001).

Petitioner asserts that the introduction of evidence of other uncharged acts is impermissible under McKinney, 993 F.2d at 1384-86.  However, the McKinney case is inapposite.  McKinney holds that "the use of 'other acts' evidence as character evidence is not only impermissible under the theory of evidence codified in the California rules of evidence . . . and the Federal Rules of Evidence . . . but is contrary to firmly established principles of Anglo-American jurisprudence."  McKinney, 993 F.2d at 1380.  McKinney does not address a case such as this, where the evidence was admitted for some other legitimate purpose (to establish intent and motive).  Moreover, McKinney was decided prior to AEDPA, and thus was not subject to the limited review standards set forth in 28 U.S.C. § 2254(d).  AEDPA "restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits in State court.'"  Johnson v. Williams, 133 S. Ct. at 1091.  Under AEDPA, "clearly established" federal law is that determined by the United States Supreme Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).

Moreover, it is a "widely recognized principle that similar but disconnected acts may be shown to establish intent, design, and system."  Lisenba v. California, 314 U.S. 219 (1941).  Both the California and Federal Rules of Evidence explicitly permit the introduction of such evidence to prove intent and motive.  Cal. Evid. Code § 1101(b); Fed. Rules Evidence 404(b).  Additionally, the alleged error here does not rise to the level of a constitutional violation.  The uncharged offense evidence was probative on issues related to both petitioner's motive and his intent.  This probative value was not substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury, as the evidence was no more inflammatory than the offenses with which petitioner was charged.

In sum, the admission of the uncharged offenses at petitioner's trial did not violate any right clearly established by United States Supreme Court precedent, and was not an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d).  Thus, petitioner is not entitled to relief.

////

////

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 23, 2013

/stra1237.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE